NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0292n.06

No. 25-1659

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 07, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MORGAN PIANKO, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| GENERAL R.V. CENTER, INC., LOREN BAIDAS, and JOY FOWLER, | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: BOGGS, KETHLEDGE, and THAPAR, Circuit Judges.

KETHLEDGE, Circuit Judge. Morgan Pianko settled her Title VII suit against General RV Center for $300,000, plus attorney's fees and costs to be determined by the district court. The court awarded Pianko 18% of the attorney's fees and 27% of the costs she reported, with prejudgment interest only on the cost award. Pianko now argues that the court abused its discretion in several respects. We affirm in part and reverse in part.

I.

Morgan Pianko worked for General RV Center at one of its Michigan dealerships. In March 2018, Pianko's office staffed an out-of-town weekend RV show. That Saturday evening, Pianko alleged, her supervisor Christopher Miller exposed himself to her and tried to force her to have sex with him. The following Thursday, Pianko reported the incident to General's human-resources manager. General investigated, and its lawyer soon informed Pianko that the company had suspended Miller for two weeks. The HR manager then told Pianko she would have to return

to work by the following Monday—11 days after Pianko had made her report—or else lose her job. Pianko considered this an effective termination, and did not return to work.

Pianko secured a right-to-sue letter from the Equal Employment Opportunity Commission, and in December 2020 she brought suit against General, Miller, the HR manager, and two members of General's board of directors. She asserted sexual-harassment and retaliation claims under Title VII and Michigan law, as well as various other state-law claims. In May 2023, the district court dismissed her claims against one of the board members. In January 2024, Pianko settled her claims against Miller in a confidential agreement. Then, in June 2024—about three and a half years after the litigation began, and less than a month before her trial against the other defendants was to begin—Pianko settled her remaining claims. Pianko agreed to dismiss those claims with prejudice, and the defendants agreed to pay her $300,000. The defendants also agreed to pay Pianko the attorney's fees and costs to which the district court found her entitled. *See* 42 U.S.C. § 2000e-5(k); M.C.L. § 37.2802.

Pianko requested $1,509,613.50 in attorney's fees; her attorney, Michael Curhan, reported 2,418.9 hours of work at rates between $600 and $675 per hour. Pianko also requested $65,410 in costs, mostly to pay her expert witness. She asked for prejudgment interest on both the fee and cost awards. The defendants argued that Curhan should be credited only 686.6 hours at $400 per hour, and they sought a 35% across-the-board reduction of the fee that resulted. They also argued that Pianko was entitled to only $17,039.14 in costs, and they opposed any prejudgment interest.

The district court largely agreed with the defendants, finding that Curhan was entitled to an hourly rate of $400. The court then deducted hours for several categories of work that Curhan had reported, including attendance at seminars, review of news articles and books, attendance at unrelated hearings over which the district judges presided, work specific to Pianko's claims against

Miller, and what the court called "premature trial preparation." The court also deducted 1,014.7 hours on the ground that Curhan's billing was "generally excessive or padded." The resulting fee award—765.5 hours at $400 per hour—was $306,200. The court further reduced that number by 10%, for a final fee award of $275,580. On that amount, the court declined to award prejudgment interest.

The district court also deducted expenses from Pianko's reported costs. The court determined that the defendants were not responsible for certain costs associated with Pianko's claims against Miller. The court then deducted $47,395—the cost of Pianko's expert witness—on the ground that Pianko had provided inadequate documentation of the expert witness's work. Pianko's final cost award was $17,465.50, on which the court awarded prejudgment interest totaling $3,468.48. Pianko unsuccessfully moved for reconsideration. This appeal followed.

## II.

Pianko challenges the district court's order in almost every respect. We review the fee and cost awards, and the denial of prejudgment interest, for an abuse of discretion. *See Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002).

## A.

Pianko argues that the district court abused its discretion when it calculated her attorney's fee award. In the Title VII context (as in others), a district court calculates a fee award using the lodestar method, under which the court multiplies counsel's reasonable hourly rates by the number of hours counsel reasonably expended on the case. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). "The district court has some discretion regarding the rates and hours that are reasonable, but only when the court provides a clear and concise explanation of its reasons for the fee award." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir.

2021) (internal quotation marks omitted). A district court may reduce a fee award beyond the product of the lodestar method, but "only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005).

1.

Pianko complains that the $400 per hour rate that the district court awarded for Curhan's work was too low. Specifically, Pianko says, Curhan should receive between $600–$675 per hour for the work he did between 2018 and 2024 in this case.

Under Title VII's provision for attorney's fees, an attorney should generally be compensated at "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd v. Sec'y of Treas.*, 227 F.3d 343, 350 (6th Cir. 2000). To determine that rate, the district court may look to each "party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citation omitted). "The burden is on the lawyer seeking fees to submit evidence—in addition to the attorney's own affidavits—showing that the requested rate is reasonable." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (cleaned up). And a rate is reasonable so long as it is "sufficient to encourage competent representation" in the relevant community. *Id.* (citation omitted).

Here, Curhan submitted an affidavit in which he said he had practiced employment law in Michigan for 40 years. He and two other Michigan employment lawyers (in two accompanying affidavits) also attested that his requested rates were reasonable. As the affidavits acknowledged, however, those rates sat at the 95th percentile for Michigan employment lawyers in the relevant years. The district court instead selected a fixed hourly rate of $400—hardly a meager return on

one's time—which was itself above the average rate for Michigan's plaintiff-side employment lawyers in 2020 (when Pianko filed her complaint) and only slightly below the average in 2023. That rate is surely adequate to attract competent counsel, and the court did not abuse its discretion in choosing it. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 576 (6th Cir. 2019).

2.

Pianko next argues that the district court should have credited more of the hours that Curhan reported. We examine the disputed hours by category, limiting our review to the categories Pianko addressed in her opening brief. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019). We uphold the district court's conclusions unless the court failed adequately to explain its reasoning or committed a clear error of judgment. *See Hubbell*, 933 F.3d at 575.

Pianko contends the court erred by discounting 500.2 hours that Curhan billed for work relating primarily to her claims against Miller. Pianko says these hours—which included time spent on her claims against Miller in this case, as well as on civil and criminal proceedings against Miller in different cases in state court—were used to gather facts and to develop legal theories relevant to her claims against all the defendants. But time spent on the state-court litigation against Miller was devoted to cases separate from the claims against these defendants, and thus is not reasonably billed to them. *See Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013). Nor must time spent only on the claims against Miller in this case be attributed to other defendants, regardless of whether that work incidentally strengthened Pianko's case against them. The court acted within its discretion when it denied payment for these 500.2 hours.

But the same is not true of other time the district court deducted. The court took off 93.8 hours for "premature trial preparation," on the ground that Curhan could not reasonably bill "for trial-related activities months before a trial date is even scheduled or, once scheduled, when that

date remains months away." But no one disputes that Curhan did this work during this litigation. *See Binta B.*, 710 F.3d at 629–30. And here the case was settled less than a month before trial. We see no indication these hours were otherwise unreasonably expended, and we think the court made a clear error of judgment by refusing to credit them. Thus, Curhan's credited time should be increased by 93.8 hours.

The district court also deducted 1,014.7 hours that it classified as "excessive and/or otherwise unreasonable." For this deduction, however, the court's arithmetic did not match its reasoning. Recall that Curhan initially reported 2,418.9 hours of work. After the court's categorical deductions (described above), 1,780.2 hours remained. The court then found that Curhan's billing was "generally excessive or padded," and concluded that a 50% "across-the-board reduction" was warranted. Yet the court did not merely halve 1,780.2. Instead, for reasons the court did not recite, it first deducted another 249.2 hours and then divided the remainder by two— leaving Curhan with 765.5 hours for the lodestar.

Our disagreement with the district court's reasoning on this point concerns only its arithmetic. The district court did not abuse its discretion by deciding to reduce Curhan's hours by 50%. The court explained that Curhan had billed (among other things) for time spent "getting up-to-speed on the law" and "preparing motions addressing issues that never arose." The court also found that Curhan had spent "unreasonable time" in responding to the defendants' motions. "We have reversed trial courts for abusing their discretion only in cases involving far more drastic cuts, with less explanation." *Hubbell*, 933 F.3d at 576 (upholding a 35% reduction). But 50% of 1,780.2 is 890.1, not 765.5. The district court adopted the latter number because—before reducing Curhan's hours by half—the court first deducted another 249.2 hours. The court gave no reason for that deduction, and we see no particular reason for it in the record. That deduction of 249.2

hours—but not the 50% deduction generally—was therefore an abuse of discretion. *See Rembert*, 986 F.3d at 617–18.

3.

Pianko argues that the district court also abused its discretion when it reduced by 10% the number that resulted from its lodestar analysis. The court did so on the grounds that most of Pianko's original claims had been dismissed; and that her recovery was "not significantly greater" than the defendants' 2022 settlement offer; and that Curhan's invoicing made it "difficult, if not impossible, to divide the hours billed on a claim-by-claim or defendant-by-defendant basis."

The court was wrong to discount Pianko's success just because she did not prevail on each of her "alternative legal grounds." *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The court also overlooked that the earlier settlement offer—unlike the ultimate settlement—excluded attorney's fees and costs. But Curhan's failure to segregate more clearly the hours he billed is enough to support the 10% reduction. *See Hubbell*, 933 F.3d at 576. The court did not abuse its discretion on this point.

4.

Pianko argues that, under both Title VII and Michigan law, the district court should have awarded prejudgment interest on Curhan's fee award. Ordinarily, a district court uses federal law to determine whether and in what amount to award prejudgment interest on a federal claim, and state law to make the same determination for any state-law claims over which the court has supplemental jurisdiction. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333–34 (6th Cir. 2007). The settlement here, however, resolved both federal and state claims. Given that the judgment was based on a combination of federal and state claims, federal law

governs whether Pianko is entitled to prejudgment interest on Curhan's fee award. *See generally In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 497 (6th Cir. 2013).

The district court declined to award prejudgment interest on Curhan's fee award because he had worked on a contingency-fee basis. Curhan understandably complains that he received no payment during the six years he worked on this case; to deny him interest on his fees, he implies, might deter other attorneys from representing plaintiffs with meritorious Title VII cases. Yet the district court accounted for the length of this litigation, and the time value of money, by giving Curhan a fixed hourly rate of $400. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010). That rate exceeds by 16% the 2020 average hourly rate for Michigan's plaintiff-side employment lawyers—not to mention the average rates for 2018 and 2019. Thus, the awarded rate itself—which applies not only to more recent work, but also to work in years when average rates were lower—already substantially compensates Curhan for the time value of money. So prejudgment interest was not required to make Pianko or Curhan whole.

B.

Pianko last argues that the court erred by refusing to award her the costs resulting from her expert witness. Pianko says she is entitled to the full $47,395 that her expert billed her.

A party seeking expert fees "must document the expert fees incurred and the work done." *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 594–95 (6th Cir. 2013). When a party fails to do so, the district court can decline to award fees. *See id.* at 595.

Here, Pianko gave the district court her expert's report, her expert's fee schedule, and a list of her costs, which included several entries relating to the expert witness. Those entries, as the court said, lacked detail. But Pianko's expert undisputedly produced a 52-page Rule 26 report, which the court itself cited when it denied the defendants' motion for summary judgment. And

even the defendants conceded in the district court that Pianko is owed $11,848.75 on account of her expert costs. On remand, Pianko's cost award should be increased by that amount, to account for the importance of the expert's report while acknowledging the sparseness of her documentation.

\*　　\*　　\*

The district court's judgment is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion. We now summarize what that means for the district court's award of fees and costs for work done in the district court.

Pianko's counsel reported 2,418.9 hours of work. The court deducted 44.7 hours, for reasons Pianko does not challenge here. That brought counsel's hours to 2,374.2. The court then properly deducted 500.2 hours that Pianko's counsel billed for work on her claims against Miller, leaving 1,874 hours. The court then improperly deducted 93.8 hours Pianko's counsel spent preparing for trial; so his hours remain at 1,874.

The court properly reduced counsel's claimed hours by an additional 50%, which leaves 937 hours. The resulting lodestar—937 hours at $400 per hour—is $374,800. The court properly reduced the lodestar amount by 10%, and properly declined to award prejudgment interest on the fee award. That leaves a final fee award of $337,320.

The final fee award for the work Pianko's counsel did in the district court should therefore be $337,320. The cost award should be increased by $11,848.75 to $29,314.25, as explained above. Finally, Pianko's counsel is entitled to a further award that reflects his modest success in this appeal. *See Rembert*, 986 F.3d at 618.